## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JERRY WAYNE BRADFORD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-09-860-M** |
| | ) | |
| **GREG WILLIAMS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response [Doc. #17] to the petition, and Petitioner has filed a reply [Doc. #26]. For the following reasons, it is recommended that the petition be denied.

### I.      Procedural Background and Grounds for Relief

On July 11, 2002, Ms. Suni McDonald, owner of Suni Alterations in Altus Oklahoma, was robbed at gun point by two men who stole about $1,000 from her. On November 19, 2003, following a jury trial, Petitioner was found guilty of the crime of robbery with a dangerous weapon (a firearm) after former conviction of two or more felonies in the District Court of Jackson County, Case No. CF-02-138. Trial Transcript (Tr. T.) Vol. III, p. 445. Petitioner was subsequently sentenced to thirty years in prison. Petition at 1.[1] On March 8, 2006, having been granted an appeal out of time, Petitioner filed his direct appeal to the

---

[1]Because the Petition is not paginated, the referenced page numbers are the result of hand counting.

Oklahoma Court of Criminal Appeals (OCCA), asserting the following grounds for reversal

of his conviction:

1.        The trial court erred by failing to sustain the demurrer to the evidence at preliminary hearing;

2.        The trial court erred by failing to sustain Petitioner's Motion to Quash;

3.        The verdict was against the clear weight of the evidence.

Response, Ex. 1 (Brief of Appellant, Case. No. F-2005-707, Oklahoma Court of Criminal

Appeals). Petitioner's appellate counsel also filed a Motion for New Trial based on allegedly

"newly discovered" evidence – an affidavit from Petitioner's brother, Billy Ray Bradford,

stating that he, not Petitioner, had committed the robbery. Response, Ex. 2.

The OCCA remanded the case to the district court for an evidentiary hearing.

Response, Ex. 4 (Order Remanding for Evidentiary Hearing). On November 20, 2006, the

trial court held an evidentiary hearing at which Billy Ray Bradford was the sole witness. The

trial judge denied Petitioner's motion for a new trial, Response, Ex. 5 (Findings of Fact and

Conclusions of Law), and on March 9, 2007, the OCCA affirmed both Petitioner's

conviction and the district court's denial of his motion for new trial, Response, Ex. 8

(Summary Opinion).

On December 5, 2007, Petitioner filed an application for post-conviction relief raising

the following grounds:

1.        Ineffective assistance of appellate counsel in failing to conduct an independent investigation to find other witnesses for Petitioner's hearing on his motion for new trial; in failing to cite legal authorities to support the arguments underlying the first two grounds raised in the brief on direct appeal before the

OCCA; in failing to include a claim of ineffective assistance of trial counsel in the motion for new trial; and in failing to raise the issue of "use of perjured evidence" on direct appeal.

2. Ineffective assistance of trial counsel in failing to timely file a motion to quash based on insufficiency of the evidence; failing to conduct pretrial discovery; failing to make reasonable independent investigation; failing to seek and screen witnesses provided by Petitioner for his defense and failing to interview state witnesses before trial; failing to object to perjured testimony solicited by the state; failing to object to the state's use of perjured testimony; and failing to request a specific jury instruction advising the jury that Petitioner would be required to serve 85% of his sentence before being eligible for parole according to the new law in Oklahoma, pursuant to Rule 3.11(B)(3)(b).

3. The State used false testimony, and the prosecutor did not correct the false testimony;

4. The cumulative effect of all errors deprived Mr. Bradford of a fair trial.

Response, Ex. 9 (Application for Post-Conviction Relief and Brief in Support of Post-Conviction Relief).

 The trial court denied Petitioner's Application for Post-Conviction Relief on March 18, 2008.  Response, Ex. 10.  Having been granted a post-conviction appeal out of time, Petitioner appealed the trial court's denial of his application for post-conviction relief by filing a petition in error in the OCCA on January 5, 2009, raising the following issues:

1. The trial court erred in failing to order the state to respond to the application for post-conviction relief;

2. The trial court erred in failing to state findings and conclusions as to each issue raised in Petitioner's application for post-conviction relief;

3. The trial court erred in failing to make specific findings of fact and to state expressly its conclusions of law relating to each issue; and

3

4.      The trial court erred in failing to hold an evidentiary hearing with regard to the application for post-conviction relief.

Response, Ex. 11.

The OCCA affirmed the trial court's denial of Petitioner's application for post-conviction relief on March 25, 2009.  Response, Ex. 12.  The OCCA agreed with the trial court that claims other than those asserting ineffective assistance of counsel had been considered and rejected in connection with  Petitioner's motion for new trial.  The OCCA concluded that Petitioner's ineffective assistance of trial counsel claims were not waived because Petitioner had asserted an ineffective assistance of appellate counsel claim as cause for his failure to raise ineffective assistance of trial counsel claims on direct appeal. Nevertheless, the OCCA affirmed the trial court's denial of post-conviction relief.

In this habeas action, Petitioner asserts the following grounds for relief:

1.      Petitioner was denied his Fourteenth Amendment right to due process when the state trial courts failed to hold an evidentiary hearing to determine whether Petitioner's appellate counsel was ineffective in failing to raise the issue of ineffective assistance of trial counsel and failing to raise the issue based on the use of allegedly false testimony left uncorrected by the prosecutor;

2.      Petitioner's rights under the Fifth and Fourteenth Amendments were violated when the trial court erred in failing to sustain the demurrer to the evidence at the preliminary hearing;

3.      Petitioner was denied his right to due process under the Fifth and Fourteenth Amendments when the trial court failed to sustain Petitioner's Motion to Quash for Insufficient Evidence;

4.      Petitioner was denied his constitutional rights in that the jury's verdict was against the clear weight of the evidence;

5.      Petitioner was denied his right to effective assistance of appellate counsel;

4

6.      Petitioner was denied his right to effective assistance of trial counsel;

7.      Petitioner was denied his constitutional rights when the state used false testimony and the prosecutor did nothing to correct the false testimony;

8.      Petitioner was deprived of due process by the cumulative effect of all the errors occurring at Petitioner's trial.

## III.    <u>Standard of Review</u>

The standards of review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to Petitioner's grounds for relief which have been adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable.'"). There is no text in the statute requiring that a state court's decision include a statement of the reasoning underlying the decision. "The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784 (2011).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

## IV.    Analysis

### A.    Ground One: State Trial Court's Failure to Hold Evidentiary Hearing to Consider Petitioner's Claims Asserted in his Application for Post-Conviction Relief

Petitioner contends that his due process rights were violated when the trial court failed to hold an evidentiary hearing to consider the claims raised in his application for post-

6

conviction relief.  Respondent asserts that this ground for relief is not cognizable in a federal habeas action.  The undersigned agrees.

Federal habeas petitions filed pursuant to 28 U.S.C. § 2254 are aimed at vindicating federal constitutional rights, not rights that are based on state law.  It is from state law, Oklahoma's Post-Conviction Procedure Act, that Petitioner's right to file an application for post-conviction relief arose.  *See* Okla. Stat. tit. 22, § 1080 *et seq.*  "The right to challenge a sentence in a post-conviction application is not constitutionally based."  *Beavers v. Saffle*, 216 F.3d 918, 922 (10th Cir. 2000).  *See also Estelle v. McGuire*  502 U.S. 62, 68 (1991) (habeas action is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States).

Under Oklahoma law, the decision to order an evidentiary hearing on issues raised in an application for post-conviction relief is generally left to the discretion of the state trial court. *See* Okla. Stat. tit. 22 §§ 1083-1084.  Because Petitioner's claim for relief is based solely on the trial court's decision not to hold an evidentiary hearing in a post-conviction action, Petitioner's claim is not cognizable in this federal habeas action. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("because the constitutional error [Petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim").  Petitioner is not entitled to habeas relief on this ground.

**B.**     **Grounds Two and Three: Trial Court's Failure to Sustain Demurrer to Evidence at Preliminary Hearing and Trial Court's Failure to Grant Petitioner's Motion to Quash for Insufficient Evidence**

Petitioner's second and third grounds for relief challenge the state trial court's rulings on motions made during the preliminary hearing.  Petitioner contends that the trial court erred in allowing the prosecution to proceed to trial because there was insufficient evidence against him presented at the preliminary hearing.  As stated above, federal habeas relief is available only to correct errors of constitutional proportions.  Because there is no federal right to a preliminary hearing in a state-court criminal proceeding, these grounds for relief are not cognizable in this federal habeas action.  *Snow v. State of Oklahoma*, 489 F.2d 278, 279 (1973).  Moreover, the Tenth Circuit Court of Appeals recognizes that federal habeas relief is not available based on an assertion of insufficient evidence at a preliminary hearing where the petitioner is subsequently found guilty at trial.  *See Powers v. Dinwiddie*, 324 Fed. Appx. 702, 704-705 (10th Cir. 2009) (because petitioner was ultimately convicted, his claim regarding the sufficiency of the evidence at his preliminary hearing cannot be grounds for habeas relief).  It is therefore recommended that habeas relief be denied on these two grounds.

**C.**     **Ground Four : Sufficiency of the Evidence**

Petitioner contends that the "verdict was against the clear weight of the evidence." Petition at 9.  In support of this claim, Petitioner asserts that the victim testified that Petitioner was not one of the men who robbed her, that other state's witnesses incorrectly identified him as the person running away from the scene, that testimony of other witnesses

indicated that his brother, Billy Ray Bradford, committed the crime, and that Billy Ray later submitted an affidavit admitting that he had robbed the victim. *Id.*

Respondent asserts that "the State proved with more than sufficient evidence that Petitioner indeed committed the robbery[]" and that Petitioner has failed to show that "the OCCA's determination is either contrary to or an unreasonable application of controlling federal law . . . ." Response at 13, 15.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial "does not focus on whether the trier of fact made the correct guilty or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1979). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that in evaluating the constitutional sufficiency of evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Moreover, as the Tenth Circuit has held, AEDPA "adds an additional degree if deference the state courts' resolution of sufficiency of the evidence questions." *Patton v. Mullin,* 425 F.3d 788, 796 (10th Cir. 2005). Thus, the question on federal habeas review on such claim is whether the state court's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard. *Id.*

Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th

Cir. 1998).  In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but rather must "accept the jury's resolution of the evidence as long as it is within the bounds of reason."  *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).  Moreover, "[t]he inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not is not considered."  *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).  The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.

In this case, the OCCA reviewed the merits of Petitioner's sufficiency of the evidence claim and found:

> In Proposition III, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of robbery with a dangerous weapon beyond a reasonable doubt. . . .  Any inconsistencies or conflicts in the evidence [were] heard and considered by the jury, and the jury acted within its province in believing the State's witnesses over the defense witnesses.

Response, Ex. 8 at 3.

The OCCA also considered the trial court's denial of Petitioner's motion for new trial, based on the affidavit of Petitioner's brother, and determined that the trial court had not abused its discretion in denying Petitioner's motion:

> Reviewing the entire record before this Court, Billy Bradford's claim of responsibility for the robbery could have been discovered before trial with reasonable diligence.  Further, the record supports a finding that had the

10

evidence been introduced at trial, there is not a reasonable probability that it would have changed the outcome.

*Id.* at 5.

The OCCA noted further that if Petitioner were given a new trial, his brother, who was then and is currently serving a life sentence on a first degree murder conviction, "could once more invoke his right not to testify and that any testimony inculpating him would be impeached." *Id.*  In support of this conclusion, the OCCA cited *Guthrie v. State*, 679 P.2d 278, 280 (Okla. Crim. App. 1984) for the proposition that under Oklahoma law "a motion for new trial on the ground of newly discovered evidence may be denied in the discretion of the trial judge where, at a subsequent trial, the witness could invoke the privilege against self incrimination and refuse to testify." *Id.*

The victim, Suni McDonald, testified that she was born in Korea but had lived in the United States for nineteen years.  Tr. T. Vol. I at 153-54.  She described the circumstances of a robbery of her business on July 11, 2002, describing two black men who entered her shop separately, assaulted her, tied her up, forced her to the floor at gun point, struck her repeatedly on the head, threatened to shoot her, removed the videotape from the security cameras and burned it, and then took over $1000 from her cash register.  Tr. T. Vol. I at 157-171.  She described the first man who entered her store as a skinny tall black guy, wearing a North Carolina cap and a navy blue Fat Albert shirt.  Tr. T. Vol. II at 313.  She described the other man as big, wearing a bandana as a mask and a cream or yellow Hawaiian shirt but no hat.  *Id*. at 314.  The record clearly reflects her difficulty with English and her confusion

11

regarding the identity of the two men.  Her testimony was subject to vigorous questioning by Petitioner's counsel, specifically regarding her prior testimony at the preliminary hearing and her inability to identify Petitioner as one of the men who beat and robbed her.[2]  Tr. T. Vol. II at 315-33.

Three other witnesses, working for the City of Altus, identified Petitioner as the man they saw running away from the area of Ms. McDonald's shop shortly after the robbery. Two of the witnesses, Mr. Coleman and Ms. Ornelas, were familiar with Petitioner and both identified Petitioner in court as the man they saw running away from the scene.  Tr. T. Vol I at 118-119, 121.  Mr. Coleman knew Petitioner personally because they had relatives in common and also because Coleman had hooked up Petitioner's cable box.   Tr. T. Vol. I at 105-109, 111.  Ms. Ornelas had seen Petitioner around town, driving his Suburban, and knew his name because she had heard Mr. Coleman talking to him.  Tr. T. Vol. I at 125-26.  The third witness, Mr. Rios, also identified Petitioner in court as the man he had seen running east away from Ms. McDonald's shop.  Tr. T. Vol. I at 140.  These witnesses described Petitioner as wearing jean shorts, a light t-shirt or button up shirt, with a white or light scarf around his neck.  Tr. T. Vol. I at 108, 122, 139.  All three witnesses testified he was wearing a baseball type hat which Mr. Coleman and Ms. Ornelas testified was North Carolina blue.  *Id.*

---

[2]In response to defense counsel's question, Ms. McDonald stated that she knew Petitioner ("Yes, I know him") and that he was not one of the men who robbed her ("It was not him").  Tr. T. Vol. II at 315.  However, when counsel repeated his question as to whether Petitioner was one of the men who robbed her, Ms. McDonald replied, "I'm not sure."  *Id*. at 316.  Then, again in response to defense counsel, she tried to explain, "It's not – I was saw him.  He's big, bigger than now.  A little bit, a little bit big today.  So I saw a picture.  It's just like the same but it's not – so I mean he so much changed, so I been confused, and it's scary."  *Id*. at 318.

In addition, Timothy Tokarski, who worked near Ms. McDonald's shop, testified that when he arrived at work he noticed a black Jeep Cherokee parked nearby with "Shana-nae" in gold letters on the back window. Tr. T. Vol. I at 176. Mr. Tokarski testified that ten to fifteen minutes later he heard the Jeep door slammed hard and the vehicle raced away quickly. *Id.* at 180. Shena Jenkins testified that the Jeep belonged to her and that she had loaned the vehicle to her good friend, Billy Ray Bradford, on the day of the robbery. Tr. T. Vol. II at 187-89. Detective Dan Meyer testified that when he interviewed Petitioner, he admitted going to McDonalds for breakfast on the morning of the robbery with his brother and another black male in the Jeep Cherokee. Tr. T. Vol II at 222.

The undersigned finds that notwithstanding conflicts in the testimony at trial, the evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find that Petitioner was guilty of robbery with a dangerous weapon (a firearm) as charged. Petitioner's challenge to the credibility of the State's witnesses and his suggestion that his own witnesses were more believable do not state a claim for habeas relief. As noted previously, the court may not weigh conflicting evidence nor consider the credibility of the witnesses in reviewing a sufficiency of the evidence claim in a habeas action. *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).

Thus, it is clear that the OCCA applied the correct legal standard to its consideration of the sufficiency of the evidence. Moreover, Petitioner has failed to show that the OCCA's finding that the evidence against Petitioner was sufficient to support his conviction by a jury

was either contrary to or an unreasonable application of Supreme Court law to the facts in the case.  Accordingly, it is recommended that habeas relief be denied on this ground.

### D.     Ground Seven: Prosecutor's Alleged Use of False Testimony

Petitioner contends that his constitutional rights were violated when the prosecutor used "false testimony" and did nothing to correct such testimony.  Petitioner first challenges the testimony of the victim, Ms. McDonald, at the preliminary hearing.   According to Petitioner, during a recess, the prosecution showed Ms. McDonald a photograph of Petitioner.  Petitioner contends that after the recess, Ms. McDonald testified falsely that she had not talked to the prosecution during the recess.  Petitioner also challenges the testimony of the three witnesses who identified Petitioner as the man they saw running across the field after the robbery because the witnesses initially identified him as a man named "Gerald" rather than "Jerry."   He also challenges the trial testimony of his brother, Billy Ray Bradford.  Petition at 12-13.

The OCCA did not specifically address this claim in affirming the trial court's denial of post-conviction relief.  Generally, however, the OCCA has recognized that "[t]he knowing use of false or misleading evidence important to the prosecution's case in chief violates the Due Process Clause of the Fourteenth Amendment." *McCarthy v. State,* 765 P.2d 1215, 1219 (Okla. Crim. App. 1988). *See also Donnell v. DeChristoforo*, 416 U.S. 637, 647 (1974) (Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence); *Miller v. Pate*, 386 U.S. 1, 7 (1967).  To prevail on this claim, however, Petitioner would have to demonstrate: (1) the testimony was misleading, (2) the

14

prosecution knowingly used the testimony and (3) the testimony was material to guilt or innocence. *McCarthy*, 765 P.2d at 1219.

In this case, Petitioner has failed to demonstrate the existence of any of these factors as to any of the challenged testimony. First, Petitioner has not demonstrated that the evidence was "false" or "misleading." The challenged testimony of Ms. McDonald was made at the preliminary hearing and not repeated at trial except to the extent elicited by Petitioner's counsel. To the extent that Billy Ray Bradford's testimony concerning his whereabouts on the morning of the robbery was false, the trial court devoted an entire evidentiary hearing to determining whether his belated affidavit constituted "new evidence" sufficient to warrant a new trial and determined that it did not. As for the challenge to the testimony of the eyewitnesses who identified the man running across the field as someone named "Gerald," that issue was throughly discussed during defense counsel's cross-examination of the witnesses. Moreover, as Respondent points out, "Jerry" is a common nickname for "Gerald." Second, Petitioner has not demonstrated that any false evidence was "knowingly" used by the prosecution. Finally, the eye witness testimony concerning Petitioner's real name is not material to his guilt or innocence as the witnesses made in-court identifications of Petitioner.

Accordingly, Petitioner has failed to demonstrate that he is entitled to relief on this ground, and it is recommended that habeas relief be denied.

15

E.   **Ground Five: Ineffective Assistance of Appellate Counsel and Ground Six: Ineffective Assitance of Trial Counsel**

Petitioner contends that the motion for new trial and the appellate brief submitted on direct appeal demonstrate his appellate counsel's ineffectiveness.

*Strickland v. Washington,* 466 U.S. 668 (1984), governs the analysis of Petitioner's ineffective assistance of appellate counsel claims.  *See Knowles v. Mirzayance*, 129 S.Ct. 1411, 1419 (2009) ("[T]his Court has repeatedly applied [the *Strickland*] standard to evaluate ineffective assistance of counsel claims where there is no other Supreme Court precedent directly on point); *see also Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (noting that ineffective assistance of appellate counsel claims are governed by "the same test as used in evaluating a claim of ineffective assistance of trial counsel); *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("The proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland* . . . .") (citations omitted).  Pursuant to *Strickland*, Petitioner "must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceedings – in this case the appeal – would have been different."  *Cargle*, 317 F.3d at 1196.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of appellate counsel claim is subject to the deference due all state court decisions in the context of federal habeas review.  The Supreme Court recently clarified the deference

due a state court's decision on habeas review when claims of ineffective assistance of

counsel are at issue:

> The pivotal question is whether the state court's application of the Strickland
> standard was unreasonable.  This is different from asking whether defense
> counsel's performance fell below *Strickland's* standard.  Were that the inquiry,
> the analysis would be no different than if, for example, this Court were
> adjudicating a *Strickland* claim on direct review of a criminal conviction in a
> United States district court.  Under AEDPA, though, it is a necessary premise
> that the two questions are different.  For purposes of § 2254(d)(1), an
> unreasonable application of federal law is different from an incorrect
> application of federal law.  A state court must be granted a deference and
> latitude that are not in operation when the case involves review under the
> *Strickland* standard itself.

*Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (Jan. 19, 2011) (internal quotations

and citation omitted).  The Supreme Court emphasized that it is the result of the state court's

decision which must "be evaluated according to the precedents of this Court."  *Id.* at 786.

The Supreme Court acknowledged that AEDPA's standard of review makes it difficult for

a petitioner to obtain habeas relief:

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being presented
> in federal court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Id.* at 786-787.

 "A claim of  appellate ineffectiveness can be based on counsel's failure to raise a

particular issue on appeal, although it is difficult to show deficient performance under those

circumstances because counsel 'need not (and should not) raise every nonfrivolous claim,

17

but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Cargle,* 317 F.3d at 1202 (*quoting Smith v. Robbins*, 528 U.S. 259, 288 (2000)). To evaluate appellate counsel's performance, the court "look[s] to the merits of the omitted issue." *Cargle*, 317 F.3d at 1202 (internal quotation marks omitted). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Id*. On the other hand, "if the omitted issue has merit but is not so compelling, [the court must assess] the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." *Id*. (*citing Smith*, 528 U.S. at 288).

In Ground Five, Petitioner asserts six claims for relief based on allegedly ineffective assistance of appellate counsel. In the first two claims, Petitioner contends that his Appellate Counsel "failed to follow the requirements for requesting a new trial, pursuant to Rule 3.11(B)(2)(b)(i)(ii)(iii)" and "failed to follow the requirements of Okla. Stat. tit. 22, § 952(7)."

These claims are asserted for the first time in this Court and are, therefore, unexhausted. Section 2254(b)(2) provides, however, that a district court may deny an application for writ of habeas corpus on the merits notwithstanding the petitioner's failure to exhaust available state court remedies. Having carefully reviewed the record in this case, the undersigned finds that the perceived inadequacies of appellate counsel allegedly exhibited in the motion for new trial do not rise to the level of ineffective assistance of

counsel.  The trial court's denial of Petitioner's motion for new trial did not result from counsel's failure to follow the state law or the rules of the OCCA; rather, the trial court was simply not convinced that the testimony of Billy Ray Bradford was credible.  *See* Response, Ex. 5 (Trial Court's Findings of Fact and Conclusions of Law).  Therefore, Petitioner has not demonstrated that he was prejudiced by this alleged deficiency in the performance of appellate counsel and habeas relief should be denied as to the two claims.

In his third claim, Petitioner asserts that his appellate counsel failed to follow the requirements of Rule 3.5(A), Rules of the Court of Criminal Appeals, in failing to cite legal authority to support her arguments presented in Propositions I and II on direct appeal.  The propositions to which Petitioner refers were reviewed by the OCCA for plain error on direct appeal based on the absence of legal citations and Petitioner's failure to file a motion to quash prior to pleading "not guilty" at the formal arraignment.  *See* Response, Ex. 8 at 2.  The OCCA specifically held that sufficient evidence had been presented at the preliminary hearing to support the trial court's decision to bind Petitioner over for trial.  *Id.*  Petitioner fails to identify any legal authority which counsel should have cited.  Nor does Petitioner demonstrate that the decision of the OCCA on direct appeal would have been different if appellate counsel had included citations in support of the two propositions in question.  Petitioner has, therefore, failed to demonstrate that he was prejudiced by this alleged deficiency in appellate counsel's representation, and habeas relief should be denied as to this claim.

In his fourth claim, Petitioner contends that appellate counsel was ineffective in failing to raise a claim of ineffective assistance of trial counsel in the motion for new trial. Because Petitioner fails to identify the basis for the ineffective assistance of trial counsel claims that should have been raised, he fails to demonstrate a constitutional violation. Moreover, as discussed above, the trial court's decision to deny the motion for new trial was based on the fact that the trial court did not find Billy Ray's belated confession credible. Therefore, Petitioner has failed to demonstrate that he was prejudiced by this alleged deficiency in appellate counsel's performance. This claim should be denied.

In his fifth claim, Petitioner states that Appellate Counsel was ineffective in failing to raise a claim concerning the use of false testimony and the prosecutor's failure to correct the false testimony. The merits of the underlying claim are discussed above. *Supra* at 14-15. Because the underlying claim is without merit, Petitioner's related ineffective assistance of counsel claim is also without merit.

In his sixth claim, Petitioner asserts that his appellate counsel was ineffective in failing to raise claims of alleged ineffective assistance of trial counsel.[3] First, Petitioner contends that trial counsel was operating under a conflict of interest. In his habeas petition, Petitioner does not support this allegation with facts. In the appeal of the denial of his post-conviction application, however, Petitioner sought to demonstrate that trial counsel was acting under a conflict by alleging that trial counsel failed to conduct an investigation, failed to seek out and screen possible witnesses, failed to object to allegedly false testimony, and

---

[3]These claims are essentially the claims separately raised by Petitioner in Ground Six.

failed to timely file a motion to quash.  Where a petitioner is asserting only the appearance of a conflict, the petitioner must show actual prejudice.  *See Strickland v. Washington* at 692 (prejudice from conflict of interest is presumed only if defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict adversely affected his lawyer's performance).  Petitioner has not alleged or demonstrated prejudice from the alleged conflict of interest.

Petitioner next contends that his trial counsel was ineffective in failing to file a timely motion to suppress and motion to quash.  The trial court actually held a hearing on the Motion to Quash and denied the motion based on the facts presented at the preliminary hearing, not on the fact that the motion was untimely filed.  Petitioner has demonstrated no prejudice arising from trial counsel's having filed the motion to quash after formal arraignment.  *See* Original Record (OR) at 65.

In his next three claims, Petitioner states that his trial counsel was ineffective in failing to conduct pretrial discovery; failing to make a reasonable independent investigation to identify evidence; and in failing to seek and screen witnesses before trial.  These three claims regarding pretrial investigation and discovery are unsupported by a factual basis.  Moreover, Petitioner does not even attempt to demonstrate what such investigation would have yielded.  Finally, trial counsel did engage in discovery by filing a Motion for Discovery and Inspection which was granted by the trial court on September 25, 2003.  *See* OR at 46-54, 63.

Petitioner also contends his trial counsel was ineffective in failing to object to the State's use of perjured testimony.  The merit of the underlying claim concerning the use of

false or misleading testimony is discussed above.  Because the underlying claim is without merit, the ineffective assistance of counsel claim is likewise without merit.

Finally, Petitioner contends that his trial counsel was ineffective in failing to request a specific instruction that Petitioner would be required to serve 85% of his sentence before becoming eligible for parole.  At the time of Petitioner's trial, Oklahoma law prohibited juries from considering parole in cases other than those for which a sentence to life without parole was a sentencing option.  It was not until 2006 that the OCCA held for the first time that juries should be instructed on the 85% rule.  *Anderson v. State*, 130 P.3d 273, 278 (Okla. Crim. App. 2006).  Therefore, Petitioner's appellate counsel was not ineffective in failing to raise this issue on direct appeal.  Moreover, Petitioner has not attempted to demonstrate prejudice arising from this perceived deficiency in counsel's performance.

In this case, the OCCA specifically identified *Strickland* as the Supreme Court law governing ineffective assistance of counsel claims.  *See* Response, Ex. 12 at 4 n.4.  In affirming the trial court's denial of post-conviction relief, the OCCA stated:

> In denying Petitioner's ineffective assistance of appellate counsel claim, the District Court has correctly concluded that Petitioner has not shown prejudice resulting from any failure by appellate counsel to raise Petitioner's post-conviction claims.  Again we note that Petitioner's Application for Post-Conviction Relief rehashes much of the same evidence that was raised and considered during the direct appeal and Motion for New Trial.  Additionally, Much of Petitioner's new information is cumulative, and that which is not [] of a character that if it had been raised on appeal, there is a reasonable probability that the appeal would have had a different result.

Response, Ex. 12 at 4.  The undersigned has thoroughly considered each claim of ineffective assistance on appeal and at trial.  Because the decision of the OCCA is neither contrary to,

nor an unreasonable application of *Strickland*, it is recommended that habeas relief on Petitioner's claims of ineffective assistance of counsel be denied.

### F.     Ground Eight: Cumulative Error

Finally, Petitioner contends that cumulative error denied him a fair trial.  In the federal habeas context, however, "[a] cumulative-error analysis aggregates all [constitutional] errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotations an citations omitted). Petitioner has failed to demonstrate any constitutional error, harmless or otherwise, in his substantive claims.  Therefore, no cumulative error can exist.  Habeas relief on this ground should be denied.

### RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied.

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72.  Any such objections should be filed with the Clerk of the District Court by December 20, 2011.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this 30th day of November, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE